UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| HELICO SONOMA, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>GANNETT CO., INC., et al.,<br><br>    Defendants. | Case No. 22-cv-00590-JSW (RMI)<br><br>**ORDER RE: SECOND DISCOVERY DISPUTE LETTER BRIEF**<br><br>Re: Dkt. No. 43 |

Now pending before the court is a discovery dispute letter brief (dkt. 43) through which Plaintiff seeks the compelled production of various email communications and two written statements pertaining to the incident that gave rise to this action. Defendants have withheld the materials in question based on assertions of attorney-client privilege and the work-product doctrine. *See* Exh A, Ltr. Br. (dkt. 43) at 10-14. The court has now reviewed the disputed materials *in camera*; and, for the reasons that follow, Plaintiff's request to compel the production of these materials is denied.

This case stems from a "doors-off helicopter flight," during which a jacket flew out of the passenger cabin of the helicopter and became entangled with its horizontal stabilizer, forcing an emergency landing. *See* Ltr. Br. of November 1, 2022 (dkt. 36) at 1. As a result of these events, the helicopter's tail rotor assembly reportedly sustained damages in the nature of a broken driveshaft. *Id*. Consequently, Plaintiff reports that it has incurred approximately $200,000 in damages for repairs and loss of use. *Id*. The helicopter was operated by Plaintiff and chartered by the Mendocino County Sheriff's Department; the occupants included Defendant Warren (an investigative reporter) who is an employee of Defendant Gannett, and reportedly the owner of the

1  jacket in question. *Id*. Sergeant Dustin Lorenzo of the Mendocino County Sheriff's Department
2  and photographer Michael Clevenger (also an employee of Gannett) were also passengers on the
3  flight (Sergeant Lorenzo and Mr. Clevenger are not parties to this action).

4  Defendants inform the court that, following the incident, Gannett's in-house attorney (Mr.
5  Tom Zipfel) verbally directed Ms. Amalie Nash (a high-ranking corporate official) to request
6  statements from Ms. Warren and Mr. Clevenger about the incident, such that Mr. Zipfel "could
7  begin the process of evaluating potential liability and the legal issues involving Gannett, Warren,
8  and Clevenger." Ltr. Br. (dkt. 43) at 5. Ms. Nash, in turn, communicated Mr. Zipfel's request via
9  telephone to Ms. Mary Irby-Jones (another corporate official) who – at that time – was the direct
10 supervisor for Ms. Warren and Mr. Clevenger. Ms. Warren and Mr. Clevenger then prepared the
11 requested statements and emailed them to Ms. Irby-Jones, who then emailed them to Ms. Nash,
12 who in turn emailed them to Mr. Zipfel. *Id*.

13 In California, attorney-client privilege allows a client "to refuse to disclose, and to prevent
14 another from disclosing, a confidential communication between client and lawyer . . ." *See* Cal.
15 Evid. Code § 954. For these purposes, a corporation is a person whose confidential
16 communications with its attorney are protected by the attorney-client privilege. *See Zurich Am.*
17 *Ins. Co. v. Superior Ct.*, 155 Cal. App. 4th 1485, 1496, 66 Cal. Rptr. 3d 833 (2007). The privilege
18 covers all forms of communication, including transactional advice and advice in contemplation of
19 threatened litigation. *Id*. at 1495. Of course, the purpose underlying the privilege is such as to
20 safeguard the confidential relationship between clients and their attorneys and to promote full and
21 open discussion of the facts and tactics surrounding legal matters. *See Mitchell v. Superior Ct.*, 37
22 Cal. 3d 591, 599, 208 Cal. Rptr. 886, 691 P.2d 642 (1984). When there is a confidential
23 communication between an attorney and a client, the entire communication is privileged. *See*
24 *Costco Wholesale Corp. v. Superior Ct.*, 47 Cal. 4th 725, 736, 101 Cal. Rptr. 3d 758, 219 P.3d 736
25 (2009). "[T]he privilege is absolute and disclosure may not be ordered, without regard to
26 relevance, necessity or any particular circumstances peculiar to the case." *Id*. at 732.

27 Thus, under § 952, protected attorney-client "confidential communications include
28 information transmitted to persons 'to whom disclosure is reasonably necessary for the

2

1    transmission of the information,' and those to whom disclosure is reasonably necessary for 'the

2    accomplishment of the purpose for which the lawyer is consulted.'" *Zurich Am. Ins. Co.*, 155 Cal.

3    App. 4th at 1495. While involvement of an unnecessary third person in attorney-client

4    communications destroys confidentiality, involvement of third persons to whom disclosure is

5    reasonably necessary to further the purpose of the legal consultation preserves confidentiality of

6    communication. *Id*. at 1496. Accordingly, "[t]he first relevant inquiry is whether the document

7    contains a discussion of legal advice or strategy of counsel" because California Evidence Code §

8    952 "provides that a 'confidential communication' 'includes a legal opinion formed and the advice

9    given by the lawyer in the course of that relationship.'" *Zurich Am. Ins. Co.*, 155 Cal. App. 4th at

10   1503. If the communication in question involves business rather than legal advice, even if given

11   by an attorney, it is not protected from disclosure by the attorney-client privilege. *Costco

12   Wholesale Corp*, 47 Cal. 4th at 735.

13       In general, while the opponent of a claim of attorney-client privilege generally has the

14   burden of demonstrating that the privilege does not apply, where the privileged communication

15   was disclosed to a third-party, the proponent of the privilege has the burden of establishing that the

16   privilege applies. *Behunin v. Superior Court*, 9 Cal. App. 5th 833, 844, 215 Cal. Rptr. 3d 475,

17   483-84 (2017). Further, as the party resisting discovery, and also because Ms. Nash and Ms. Irby-

18   Jones were intermediaries between Mr. Zipfel and Ms. Warren and Mr. Clevenger, the

19   undersigned concludes that Defendants should shoulder the burden of proving that the attorney-

20   client privilege applies. They must support their privilege claim with sufficient factual information

21   for the evaluation of the merits of that claim. *See Ritchie v. Sempra Energy*, No. 10CV1513-

22   CAB(KSC), 2015 U.S. Dist. LEXIS 184474, 2015 WL 12912030, at *4 (S.D. Cal. June 11, 2015).

23   "The information . . . must be sufficiently specific to allow a determination of whether each

24   withheld document is or is not in fact privileged." *Wellpoint Health Networks, Inc. v. Superior

25   Court*, 59 Cal.App.4th 110, 130, 68 Cal. Rptr. 2d 844 (1997) (internal citation omitted).

26       On the other hand, the work product doctrine "shelters the mental processes of the

27   attorney, providing a privileged area within which he can analyze and prepare his client's case."

28   *See In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004). "[T]he work product doctrine

only attaches to documents prepared in anticipation of litigation or for use in trial." *Hickman v. Taylor*, 329 U.S. 495, 511-12, 67 S. Ct. 385, 91 L. Ed. 451 (1947).

Plaintiff's contention that the statements and communications in dispute are not privileged because they were communicated through Ms. Warren's and Mr. Clevenger's supervisors to their corporate counsel are unpersuasive. First, Plaintiff submits that Defendants "have produced zero documentary evidence showing that these were attorney-client communications." *See* Ltr. Br. (dkt. 43) at 3. Plaintiff submits that this could have been achieved by the inclusion of phrases such as, "this has been requested by an attorney," or "at attorney's request," or "confidential," or "subject to evidence code § 952" in the subject or body of the email communications up and down the chain of command at Defendants' business. *Id*. Plaintiff then adds that "[t]he sole 'evidence' is an unverified statement by Defendants' counsel of record that Defendants' in-house counsel requested these documents by telephone" which Plaintiff contends "does not meet Defendants' burden to show these were communications intended to be confidential." *Id*. Plaintiff's argument in this regard is unpersuasive for several reasons. First, Plaintiff has submitted no authority (nor has the court found any) to support the suggestion that when an in-house attorney requests written statements from corporate employees in order to evaluate liability in potential future litigation that such requests cannot be advanced verbally and that the applicability of the attorney-client privilege to such statements or their associated communications must be independently corroborated by "documentary evidence." Because there is no support in the law for such a proposition, and because Defendants' counsel of record is an officer of the court (with an independent duty of candor to the court) the undersigned readily accepts the representation that Mr. Zipfel did in fact advance his request verbally because the record manifests no reason whatsoever to doubt that representation.

Plaintiff also adds that it "is far more plausible [] that these were informal business emails from employee to supervisory regarding a workplace incident." *Id*. Plaintiff then asks rhetorically why it was necessary for Mr. Zipfel's request for statements to be communicated through two levels of corporate supervisor, rather than Mr. Zipfel directly contacting Ms. Warren and Mr. Clevenger. *Id*. This too is unpersuasive. Not unlike military structures, corporations are

4

1 hierarchical constructs and it would be unreasonable and unduly inflexible to hinge the
2 applicability of the attorney-client privilege in the corporate setting on an artificial requirement to
3 the effect that in-house counsel may not communicate with corporate employees through their
4 supervisors. Instead, the court is convinced that the transmission of the statements and emails in
5 question between in-house counsel and Ms. Warren and Mr. Clevenger, through their supervisors,
6 was reasonably necessary. Nor can it be seriously suggested that the disputed communications
7 "were informal business emails from employee to employer regarding a workplace incident" as
8 Plaintiff contends. *See id*. The undersigned finds that there is no conceivable business purpose for
9 an investigative journalist and photographer to produce such statements and to transmit them to
10 their supervisors but for the receipt of legal advice as to potential liability issues stemming from
11 the incident. In other words, Defendants' business is the gathering and reporting of newsworthy
12 events, and the event in question was no more newsworthy than if Ms. Warren or Mr. Clevenger
13 had spilled a beverage in a taxicab on the way to an assignment which had caused damage to the
14 interior of the taxicab. Accordingly, having reviewed the materials in dispute, it is difficult for the
15 court to conceive of any purpose for the preparation and transmission of the communications in
16 question *other than* for Mr. Zipfel to evaluate Defendants' liability in any potential future
17 litigation stemming from the incident in question.
18       As to work-product, Plaintiff contends (in conclusory fashion) that the communications in
19 question were not prepared in anticipation of litigation and that "they would have been created in
20 essentially the same form regardless of the litigation." *Id*. In support of this suggestion, Plaintiff
21 states again that "zero documentary evidence supports their conclusions that in-house counsel
22 requested these documents for purposes of litigation." *Id*. However, as stated above, the law
23 contains no such requirement for "documentary evidence" to corroborate a verbal request by
24 counsel for such information in order for the privilege to apply.
25       Lastly, as to the assertion of work-product, Plaintiff claims that it has a "substantial need"
26 to obtain these documents (despite the fact that Plaintiff has extensively deposed Ms. Warren and
27 that it has chosen not to depose Mr. Clevenger) because of the highly speculative assertion that
28 these documents *might* "contain facts that differ from Defendants' deposition testimony and

1  written discovery requests and that [might] undermine credibility . . . [w]ithout these statements,

2  Plaintiff simply has no way of knowing whether these statement are inconsistent with subsequent

3  testimony – inconsistencies that can make or break the issue of liability in this case." *Id*. at 4.

4  These arguments are similarly unpersuasive. First, Plaintiff has deposed Ms. Warren extensively

5  and has presumably subjected her account to a thoroughgoing cross examination. Second, Plaintiff

6  has chosen not to depose Mr. Clevenger. Third, Plaintiff has articulated no indication whatsoever

7  why it believes there may be any material difference between Ms. Warren's deposition testimony

8  and her statement to her employer's in-house counsel. Fourth, and most importantly, Plaintiff's

9  argument conveniently overlooks the fact that Sergeant Dustin Lorenzo of the Mendocino County

10 Sheriff's Department was also aboard the helicopter on the date in question – meaning that there

11 was an independent third-party witness that Plaintiff could have deposed if it believed that the

12 factual accounts of the incident in question might have been the subject of fluctuation.

13 In short, the undersigned has reviewed the statements, along with their associated email

14 communications, and – for the reasons stated herein, as well as for the reasons articulated by

15 Defendants (*see id*. at 5-8) – the court concludes that the materials in question should indeed be

16 shielded from disclosure pursuant to the attorney-client privilege and the work-product doctrine.

17 Accordingly, Plaintiff's request to compel the production of these materials is **DENIED**.

18 **IT IS SO ORDERED.**

19 Dated: January 13, 2023

_____
ROBERT M. ILLMAN
United States Magistrate Judge